# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TANYA C.,**

**Plaintiff,**

**v.**                                                **Case No. 20-CV-958**

**KILOLO KIJAKAZI,**
**Acting Commissioner of the Social Security Administration,**

**Defendant.**

## DECISION AND ORDER

### 1. Introduction

Alleging she has been disabled since July 21, 2017 (Tr. 230), plaintiff Tanya C. seeks disability insurance benefits. She is insured through December 31, 2022. (Tr. 230.) After her application was denied initially (Tr. 77-92) and upon reconsideration (Tr. 93-108), a hearing was held before Administrative Law Judge (ALJ) Peter Kafkas on June 18, 2019 (Tr. 33-76). On July 19, 2019, the ALJ issued a written decision concluding that Tanya C. was not disabled. (Tr. 7-29.) After the Appeals Council denied Tanya C.'s request for review on May 15, 2020 (Tr. 1-6), she filed this action.

All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 5), and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Tanya C. had not engaged in substantial gainful activity since her alleged onset date. (Tr. 12.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Tanya C. has the following severe impairments: "headaches, polyarthritis, degenerative disc disease, asthma, and anxiety." (Tr. 12.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational

requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Tanya C.'s impairments did not meet or medically equal a listing impairment.

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Tanya C. has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently balance, crouch, kneel, stoop and climb ramps and stairs, but should never crawl or climb ladders, ropes or scaffolds. The claimant can frequently reach and overhead reach bilaterally and can frequently handle, finger, and feel bilaterally. The claimant can occasionally operate foot controls. The claimant must avoid concentrated exposure to extreme cold, extreme heat, humidity, and excessive noise; concentrated exposure to environmental irritants such as fumes, odors, dusts and gases; and avoid use of dangerous moving machinery and exposure to unprotected heights. The claimant can perform activities requiring frequent near and far visual acuity. The claimant can perform simple, routine tasks. The claimant is allowed to be off task 9% of the day, in addition to regularly scheduled breaks.

(Tr. 15.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Tanya C. could not perform any of her past relevant work.

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, the ALJ concluded that there were jobs that Tanya C. could perform, including office helper (Dictionary of Occupational Titles (DOT) Number 239.567-010); mail clerk (DOT Number 209.687-026) and housekeeping cleaner (DOT Number 323.687-014). (Tr. 23.) Therefore, Tanya C. was not disabled.

## 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the

Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

### 4.1. Time Off Task

The ALJ concluded that, because Tanya C.'s anxiety and headaches affected her concentration, persistence, and pace, she was limited to jobs involving simple, routine tasks that allowed her to be off task up to nine percent of the day in addition to regular breaks. Tanya C. argues, "The 9%-off-task limitation is an arbitrary finding, the likes of which have largely been eliminated under *Lanigan v. Berryhill*, 865 F.3d 558 (7th Cir. 2017)." (ECF No. 17 at 8.)

The Commissioner responds that the ALJ adequately explained the basis for his conclusion and Tanya C. has not pointed to credible evidence showing that she would be off task more often. (ECF No. 21 at 5-9.) The only evidence she points to is the opinion of Dr. Joseph Nicholas, her primary care provider, whose opinion the ALJ found to be "less persuasive" than that of her allergist, whose opinion the ALJ found to be "somewhat persuasive." (ECF No. 21 at 8.)

The ALJ's nine percent off-task limitation was undoubtedly arbitrary. But such is the nature of nearly any attempt to quantify the degree to which a person may be off task. *See Barker v. Saul*, No. 20-CV-38, 2021 U.S. Dist. LEXIS 42574, at *5 (E.D. Wis. Mar. 8, 2021) (citing *Priessnitz v. Berryhill*, No. 17-C-372, 2018 U.S. Dist. LEXIS 33095, at *28 (E.D. Wis. Mar. 1, 2018)). Given the Administration's penchant for vague terms like "moderate" or "substantial," it is curious that an ALJ would choose to quantify so precisely something amorphous and variable like the time a person will be off task during a workday. The ALJ's choice of nine percent here is doubly curious given that vocational experts routinely state that ten percent is the most that an employer will tolerate and thus the figure that ALJ's commonly use in determining a claimant's RFC, *see Barker*, 2021 U.S. Dist. LEXIS 42574, at *5 (citing cases), although some vocational experts have identified fifteen percent as the maximum time off task that an employer will tolerate, *see, e.g., Freed v. Kijakazi*, No. 20-CV-1012, 2021 U.S. Dist. LEXIS 178352, at *12 (E.D. Wis. Sep. 20, 2021). The vocational expert here testified, "I think if they're off task 15% of the time or more excluding breaks, which is 8 minutes every hour, again, that's -- they're not going to satisfy any employer." (Tr. 74.) This would seem to set the maximum tolerable limit of time off task at fourteen percent of the workday.

But what matters is not whether nine percent (rather than eight, ten, or any other percent) was the correct quantification of the time Tanya C. would be off task. Rather, what matters is whether there was substantial evidence for the ALJ's conclusion and

whether the ALJ connected the conclusion to that evidence. *See Lanigan*, 865 F.3d at 563; *Barker*, 2021 U.S. Dist. LEXIS 42574, at *5 (citing *Finzel v. Colvin*, No. 15-C-98, 2015 U.S. Dist. LEXIS 107184, at *16 (E.D. Wis. Aug. 14, 2015)).

Tanya C. asserts, "The 9%-off-task limitation is an arbitrary finding, the likes of which have largely been eliminated under *Lanigan v. Berryhill*, 865 F.3d 558 (7th Cir. 2017)." (ECF No. 17 at 8.) But *Lanigan* has not "eliminated" findings such as the ALJ's. *See Johnson v. Saul*, No. 19-C-856, 2020 U.S. Dist. LEXIS 67986, at *36 (E.D. Wis. Apr. 16, 2020) ("*Lanigan* did not create a per se rule of reversal whenever the ALJ fails to specifically explain a time off task percentage."). The problem in *Lanigan* was two-fold. First, the ALJ did not identify the basis for the ten percent off-task limitation. *Lanigan*, 865 F.3d at 563. Without knowing the basis for the ten percent off-task limitation, the court could not say that the limitation was supported by substantial evidence. Second, given that it was undisputed that Lanigan required frequent unscheduled breaks when he attempted to work part-time, there was evidence that he would be off task more than ten percent of the day. *Id*.

The ALJ articulated Tanya C.'s nine percent off-task limitation by saying, "[d]ue to decreased concentration associated with anxiety and headaches, the claimant is limited to work involving simple, routine tasks and that allows her to be off task 9% of the day, in addition to regularly scheduled breaks." (Tr. 20.) This conclusory statement does not explain how he arrived at the nine percent off-task limitation. Without any explanation,

the court cannot find that the nine percent off-task limitation is supported by substantial evidence.

But remand is required only if the ALJ's error was material. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (discussing harmless error). Tanya C. must point to evidence that she would be off task to a degree that would preclude work. *Barker*, 2021 U.S. Dist. LEXIS 42574, at *7; *Reichart v. Saul*, No. 18-CV-1344, 2019 U.S. Dist. LEXIS 142493, at *4 (E.D. Wis. Aug. 21, 2019). Again, the vocational expert opined, "I think if they're off task 15% of the time or more excluding breaks, which is 8 minutes every hour, again, that's – they're not going to satisfy any employer." (Tr. 74.)

Tanya C. points to Dr. Nicholas, who opined that Tanya C. would need hourly unscheduled breaks lasting on average 60 minutes, during which she would need to lie down or sit quietly. (Tr. 891.) The ALJ found Dr. Nicholas's opinion unpersuasive because his "treatment notes fail to document significant, ongoing treatment for headaches," he "never noted any abnormalities in the claimant's presentation (i.e., pain behaviors, distress) or neurologic/physical function," he "relied heavily on the claimant's subjective reports," Tanya C. declined to pursue additional treatment recommendations, including Botox or medication, she treated her headaches with exercise, and his opinion was inconsistent with Tanya C.'s treatment history and activities. (Tr. 21.)

Tanya C. does not argue that the ALJ erred in finding that Dr. Nicholas's opinion was unpersuasive. Rather, she argues that Dr. Nicholas's opinion is nonetheless "concrete

evidence of off-task behavior that is lacking anywhere else in the file." (ECF No. 22 at 4.) In other words, her argument seems to be that, because Dr. Nicholas's opinion is the only evidence that she would be off task, by finding that Tanya C.'s impairments would result in her being off task the ALJ was required to accept Dr. Nicholas's opinion regarding the extent to which Tanya C. would be off task.

But under 20 C.F.R. § 404.1520c an ALJ is not limited to accepting or rejecting an opinion in toto. An ALJ can reasonably accept a doctor's opinion that a limitation exists but conclude that it is not as severe as the doctor contends. Thus, the court rejects Tanya C.'s argument that the ALJ was required to accept Dr. Nicholas's opinion that she required hourly unscheduled breaks lasting on average 60 minutes. The ALJ having already concluded that Dr. Nicholas's opinion was unpersuasive, remand would be a waste of time. *See Hall v. Saul*, No. 19-CV-1780, 2020 U.S. Dist. LEXIS 226466, at *11 (E.D. Wis. Dec. 3, 2020).

Similarly, Tanya C. argues that her "testimony also described a frequency of headaches that, on the whole, would preclude 91% on-task work performance, particularly since the headaches were brought on by activity." (ECF No. 17 at 11.) Again, whether the ALJ's nine-percent figure was correct is not the question. The question is whether Tanya C. would be off task at a frequency that would be disabling. While Tanya C. testified that sometimes stress and physical activity can trigger her headaches and anxiety (Tr. 57-58), her testimony was unclear as to how frequently this occurred.

Moreover, as discussed below in Section 4.3, the ALJ reasonably concluded that Tanya C.'s symptoms were not as severe as she alleged. (Tr. 16.) With respect to her testimony that activity increased her symptoms, the ALJ noted that there was evidence of the opposite—Tanya C. treated her headaches with exercise that included cardio, weightlifting, and yoga. (Tr. 18, 19, 20, 21.)

In sum, while the ALJ's conclusion that Tanya C. would be off task up to nine percent of the workday is unsupported by substantial evidence, the error was harmless. Tanya C. has not pointed to evidence which the ALJ had not appropriately discounted that supports a conclusion that she would be off task more than what an employer would tolerate. *See Barker*, 2021 U.S. Dist. LEXIS 42574, at *6; *Reichart*, 2019 U.S. Dist. LEXIS 142493, at *5. Therefore, Tanya C. is not entitled to remand on this ground.

### 4.2. Concentration, Persistence, and Pace

Tanya C. argues that the ALJ erred by not including her limitation in concentration, persistence, and pace in the hypothetical he presented to the vocational expert. (ECF No. 17 at 11-13.) The nine percent off task limitation, she argues, is both invalid and insufficient to account for this limitation. Limiting a claimant to simple and routine tasks does not account for a limitation in concentration. (ECF No. 17 at 12.)

At step three the ALJ found that Tanya C. has a moderate limitation "[w]ith regard to concentrating, persisting, or maintaining pace …." (Tr. 14.) He continued:

The claimant has reported that her impairments affect her ability to concentrate and complete tasks (Exh. 6E). However, she attributes her

inability to concentrate at times to pain/headaches (Exh. 6E). She has reported that, when not experiencing a severe headache, she tends to household chores, cares for her children (getting her son ready and off to school, caring for her 3-year-old, helping with homework, packing lunches/snacks), prepares meals, and tends to light household chores (Exh. 6E). On days when her dad watching [sic] her 3-year-old, she works out, does laundry, runs errands, makes phone calls, pays bills, does paperwork, and/or rests if needed (Exh. 6E). Further, the claimant's treating and examining providers have not noted any deficits in this domain. In sum, while the claimant has some limitation in this domain, the evidence of record does not support a finding that these are more than moderate.

(Tr. 14-15.)

In assessing Tanya C.'s RFC, the ALJ stated, "due to decreased concentration associated with anxiety and headaches, the claimant is limited to work involving simple, routine tasks and that allows her to be off task 9% of the day, in addition to regularly scheduled breaks." (Tr. 20.) The hypothetical the ALJ presented to the vocational expert was more detailed. He asked the vocational expert to consider a person who

would be limited to understand [sic], carry out and remembering no more than simple instructions; would be limited to simple, routine tasks and could have only occasional interaction with the public. And would be allowed to be off task up to 90% [sic] of the workday in addition to regularly scheduled breaks, can an individual with these limitations perform the claimant's past work as the claimant performed it or as it is customarily performed?

(Tr. 71.)

Concentration, persistence, and pace "refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate." *Recha v. Saul*, 843 F. App'x 1, 3 (7th Cir. 2021) (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00E(3)). "A moderate

rating in maintaining concentration, persistence, and pace means the claimant is so limited in *at least one of* those areas, not necessarily all three." *Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) (citing 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(F)(3)(f)) (emphasis in original). It is clear from the ALJ's decision that he found Tanya C. to be limited only with respect to concentration. (Tr. 20 ("due to decreased concentration associated with anxiety and headaches, the claimant is limited to work involving simple, routine tasks and that allows her to be off task 9% of the day, in addition to regularly scheduled breaks").)

Tanya C. notes that courts often hold that limiting someone to simple, routine tasks does not sufficiently address a moderate limitation in concentration, persistence, and pace. (ECF No. 17 at 12-13 (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Indoranto v. Barnhart*, 374 F.3d 470, 473-74 (7th Cir. 2004)).)

The Commissioner responds that under the revised regulations "moderate" means "fair." (ECF No. 21 at 11 (citing 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(E)(3), (F)(2)).) Thus, when he said that Tanya C. has a moderate limitation the ALJ was not saying that she has a "bad" or "inadequate" ability in this domain but rather that she has a fair ability to concentrate, persist, and maintain pace. (ECF No. 21 at 11 (quoting *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021).)

*Pavlicek*, however, dealt with a slightly different recurring problem in social security law—an alleged conflict between the checklist and narrative portions of a mental RFC assessment form completed by a state agency consultant. *See Hoeppner v. Kilolo Kijakazi*, No. 20-CV-582, 2021 U.S. Dist. LEXIS 175193, at *25 (E.D. Wis. Sep. 15, 2021). The court of appeals held only that the state agency's finding that the claimant had a moderate limitation in concentration and pace in Section I of the form was appropriately accounted for in the expert's Section III finding that that claimant could perform simple, repetitive tasks at a consistent pace. *Pavlicek*, 994 F.3d at 783. Thus, a moderate limitation in concentration, persistence, and pace is consistent with being able to perform simple, repetitive tasks at a consistent pace.

But the question posed here is subtly different. Tanya C.'s argument is that a nine percent off-task limitation and a limitation to simple, routine tasks do not adequately account for a moderate limitation in concentration, persistence, and pace. In other words, while a state agency consultant may conclude that a claimant with a moderate limitation in concentration, persistence, and pace can perform simple and routine tasks, it does not necessarily follow that, by limiting a claimant to simple and routine tasks the ALJ adequately accounts for a claimant's moderate limitation in concentration, persistence, and pace.

As framed by Tanya C., the issue is governed not by *Pavlicek* but by cases such as *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014), and *Varga v. Colvin*, 794 F.3d 809, 814 (7th

Cir. 2015), which hold that a limitation to simple and routine tasks is insufficient to account for a moderate limitation in concentration, persistence, and pace. While regulations have subsequently defined "moderate" as "fair," that definition does not represent a shift in the law. *See Turner v. Saul*, No. 20-C-998, 2021 U.S. Dist. LEXIS 98305, at *35 (E.D. Wis. May 25, 2021). A "fair" ability, although not synonymous with "bad" or "inadequate," *Pavlicek*, 994 F.3d at 783, still reflects an impairment that must be accounted for in the RFC.

Tanya C. frames the matter as "a straightforward application of circuit precedent [which] establishes that the remaining limitation to simple, routine tasks does not account for a deficit in concentration." (ECF No. 17 at 11-12.) But there is no requirement of remand simply because an ALJ accounts for a moderate limitation in concentration, persistence, and pace by limiting the claimant to simple, repetitive tasks. *See, e.g., Bruno v. Saul*, 817 F. App'x 238, 242 (7th Cir. 2020) (holding that a limitation to simple, routine tasks was appropriate because claimant's moderate limitation in concentration, persistence, and pace arises only with respect to complex tasks); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("the ALJ *generally* may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace" (emphasis added; quotation marks omitted)). Depending on the nature of the claimant's impairments, a limitation to simple and repetitive tasks may be all that is necessary. It is the plaintiff's obligation to show that

a limitation to simple, routine tasks did not adequately account for her moderate limitation in concentration, persistence, and pace.

Tanya C. does not connect the ALJ's alleged error to the medical evidence. In other words, she has not shown that the moderate limitation in concentration, persistence, and pace required restrictions beyond a limitation to simple, routine tasks and an ability to be off task for up to nine percent of the workday. Notably, neither state agency consultant found that Tanya C. had more than a mild limitation in this domain. (Tr. 86; 102.) And none of Tanya C.'s treating or examining providers found her to have any limitation in this domain. (Tr. 15.)

Tanya C. testified, "like I said, the concentration part, when I'm trying to do something that involves paperwork and reading and trying to pull it all together or anything where I start to feel like I'm rushed and busy, getting anxious." (Tr. 58.) She also wrote, "My Concentration is limited and sometimes completely nonexistent when I am in pain. Having to concentrate for long periods of time can trigger or intensify a headache." (Tr. 260.)

Given the nature and characteristics of Tanya C.'s concentration problems, a limitation to simple and routine tasks (*e.g.*, tasks that did not require analysis like her prior work as a paralegal) reasonably accounted for her moderate limitation in concentration, persistence, or pace. Consequently, Tanya C. has not demonstrated that remand is required to further address this issue.

### 4.3. Symptom Severity and Activities of Daily Living

An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work related activities ...." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

The ALJ stated that "the nature and scope of the claimant's reported activities is also not consistent with a finding of debilitating physical or mental impairment." (Tr. 20.) He then went on to discuss her daily activities, some of which were quite strenuous. (Tr. 20.)

Tanya C. argues that the ALJ erroneously equated her daily activities with an ability to work fulltime. (ECF No. 17 at 14.) She contends that, insofar as he was saying that her activities were inconsistent with her alleged symptoms, the ALJ failed to explain

how they were inconsistent. (ECF No. 17 at 15.) The ALJ noted that, although Tanya C. reported that her headaches kept her from activities outside her home, she vacationed in the Wisconsin Dells. However, Tanya C. argues, the ALJ overlooked that this vacation led to a trip to the emergency room because of a headache. (ECF No. 17 at 15-16.) As for her exercise regimen, she argues that the ALJ overlooked that these activities were limited to when she was feeling up to it, and she exercised to try to treat her headaches. (ECF No. 17 at 16.)

The Commissioner responds that the ALJ's assessment of Tanya C.'s symptoms was supported by substantial evidence and consistent with SSR 16-3p. (ECF No. 21 at 15-19.) Tanya C. inappropriately focuses on a single isolated sentence in the ALJ's overall analysis. (ECF No. 21 at 18.)

Under SSR 16-3p, in addition to her daily activities, the ALJ must consider the following evidence, if relevant, when assessing the severity of a claimant's pain:

- The location, duration, frequency, and intensity of pain or other symptoms;

- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Overall, the ALJ undertook a thorough review of the record to assess the severity of Tanya C.'s symptoms in accordance with SSR 16-3p. He noted that, although Tanya C. reported frequent disabling headaches, aside from a short period of time she did not take any medication for her headaches (Tr. 16) despite reporting that the medication worked well at improving her symptoms (Tr. 18). She refused additional testing or treatment options. (Tr. 18.) Nor did she take medication for her anxiety. (Tr. 17.) Her diagnosis of polyarthritis was poorly substantiated and treated only with CBD oil and hemp extract. (Tr. 16-17, 18.) There were only minor objective abnormalities to support her claims of neck and back pain. (Tr. 17, 19.) She attended physical therapy for only a short time before stopping. (Tr. 19.) And her asthma was well controlled and infrequently caused problems. (Tr. 17, 19.)

Tanya C. challenges a narrow aspect of the ALJ's decision in which he said:

> The claimant's activities demonstrate that, despite experiencing symptoms of her physical and mental impairments, she has remained able to engage in a number of normal day-to-day activities, many of which involve at least a light level of exertion, as well as the some of the mental abilities and social interactions necessary for obtaining and maintaining employment.

(Tr. 20.)

It is well-established that an ALJ errs if he equates a claimant's ability to perform daily activities with an ability to work fulltime. *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). For example, just because a claimant washes her own dishes does not mean

she could work fulltime as a dishwasher. "[T]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons … and is not held to a minimum standard of performance, as she would be by an employer." *Id.* (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

By stating that Tanya C.'s activities "involve at least a light level of exertion," the ALJ was observing merely that many of her daily activities involved the exertional demands of light work, *i.e.*, "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). This was appropriate under SSR 16-3p and supported by substantial evidence. The statement cannot be fairly read as impermissibly equating Tanya C.'s daily activities to an ability to perform light work on a competitive and sustained basis.

Overall, the ALJ provided specific reasons for his assessment of Tanya C.'s symptoms, those reasons were consistent with the overall record and supported by the evidence, and his explanation was adequately articulated to enable the court to review that assessment. *See* SSR 16-3p; *Rennaker v. Saul*, 820 F. App'x 474, 480 (7th Cir. 2020). Because the ALJ's assessment of Tanya C.'s symptoms was not "patently wrong," the court cannot upset it. *See Apke v. Saul*, 817 F. App'x 252, 257 (7th Cir. 2020).

### 5. Conclusion

Although the ALJ failed to connect his nine percent off-task limitation to the evidence, the error was harmless because Tanya C. has not pointed to evidence that she would be off task at a rate that would preclude work. Similarly, Tanya C. has not identified evidence that her moderate limitation in the domain of concentration, persistence, and pace was not accounted for by limitations to simple, routine tasks and an ability to be off task for up to nine percent of a workday. As for her activities of daily living, the ALJ did not impermissibly equate those activities to an ability to engage in sustained work. Rather, the ALJ appropriately relied on those activities and other evidence in the record to conclude that Tanya C. symptoms were not as severe as she alleged. Because the ALJ applied the correct legal standards and his decision is supported by substantial evidence, the court is required to affirm that decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 6th day of December, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge